# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA

*Plaintiff,*

vs.

MARIANO HERRERA

*Defendant.*

Case No. 11-10074-03-EFM

**MEMORANDUM AND ORDER**

Defendant Mariano Herrera asks the Court to suppress inculpatory statements he made to investigators after Herrera and two co-defendants were arrested in a drug sting operation. Herrera claims that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. A suspect waives *Miranda* rights if the suspect was given an adequate *Miranda* warning, understood that warning, and subsequently made an uncoerced statement to investigators. The Court denies Herrera's motion to suppress because the government has proved by a preponderance of the evidence that Herrera heard and understood the written *Miranda* warning provided to him and then voluntarily spoke with investigators.

**I. Factual and Procedural Background**

Herrera and his two co-defendants were arrested and charged with numerous violations of law, including possession with intent to distribute methamphetamine. Upon arrest, Herrera was

detained and questioned by Detective Padron of the Wichita Police Department. Det. Padron first sought oral assurances that Herrera's cognition was not impaired by drugs, alcohol, or injury, and that Herrera could understand what Det. Padron was saying. Det. Padron then provided Herrera with a U.S. Immigration and Customs Enforcement form containing a *Miranda* warning written in Spanish. The form has two parts—a declaration of rights and a waiver of the same.[1]

Det. Padron first instructed Herrera to read aloud seven statements advising Herrera of his rights and, if Herrera understood the advisement, place his initials beside the statement. Herrera complied with this request, occasionally requiring assistance from Det. Padron. After Herrera read each advisement, Det. Padron asked in Spanish, "Do you understand?" and Herrera responded affirmatively. After Herrera read the final advisement, the following exchange occurred:

> [PADRON]: Knowing your rights did I ask you some questions?
>
> [HERRERA]: Yes.
>
> [PADRON]: Ok. It is . . . it is . . . .
>
> [HERRERA]: I'm a little scared because of all this. It is ugly.
>
> [PADRON]: Put your name here and signature here please. I'm going to sign as a witness and then you want to talk to me? Now tell me what happened yesterday.

Herrera then told Det. Padron his recollection of the events leading to his arrest.

## II. Analysis

In this suppression motion, the Court must decide whether Herrera voluntarily, knowingly, and intelligently waived his *Miranda* rights after being detained. The admissibility of a defendant's custodial statements to investigators is governed by the Due Process Clause of the Fourteenth

---

[1] These portions are entitled "Declaración de Derechos" and "Renuncia a Los Derechos."

Amendment, which examines the voluntariness of the statement,[2] and the Fifth Amendment, which protects a defendant's right to be free from compelled self-incrimination.[3] The Supreme Court's decision in *Miranda v. Arizona*[4] sets forth prophylactic measures to guard against the inherently coercive nature of custodial interrogations. Specifically, "[p]rior to any [custodial] questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."[5] Statements made during custodial interrogations are inadmissible at trial unless the suspect "voluntarily, knowingly and intelligently" waives each articulated right.[6] The waiver must be voluntary in the sense that it is not the product of intimidation, coercion, or deception; furthermore, it must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[7]

The government must prove by a preponderance of the evidence the validity of a suspect's *Miranda* waiver.[8] But the government need not produce an express waiver[9]—it can establish that

---

[2] *See Dickerson v. United States*, 530 U.S. 428, 433 (2000).

[3] *See* U.S. Const. amend. V (stating that no "personal shall . . . be compelled in any criminal case to be a witness against himself").

[4] 384 U.S. 436 (1966).

[5] *Id.* at 444.

[6] *Id.* at 474, 476.

[7] *Moran v. Burbine*, 475 U.S. 412, 421 (1986), *accord Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2260 (2010) (citations omitted).

[8] *See United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997), *cert. denied*, 522 U.S. 845 (1997).

[9] *See Thompkins*, 130 S. Ct. at 2261 (stating that "waivers can be established even absent formal or express statements of waiver"); *Toro-Pelaez*, 107 F.3d at 825 ("An express statement of waiver by the defendant is not required; instead, waiver can be inferred from the defendant's actions and words.").

the suspect implicitly waived *Miranda* rights by showing that (1) the suspect received a *Miranda* warning, (2) the suspect understood the warning, and (3) the suspect made an uncoerced statement to investigators.[10] In this case, Herrera does not challenge the content of the *Miranda* warning he received. Instead, he argues that he did not understand or voluntary waive his *Miranda* rights. The Court will consider these two arguments in turn.

**A.      Herrera understood his *Miranda* rights**.

When deciding whether a suspect understood a *Miranda* warning, the court considers such factors as the suspect's age, intelligence, education, and physical state, as well as the length and nature of the suspect's detention and questioning.[11] Herrera is an adult, and Det. Padron ensured that Herrera was not under the influence of drugs or alcohol, or suffering from any potentially debilitating head injuries at the time of questioning. As discussed below, there is no evidence that the duration or conditions of Herrera's detention and questioning was coercive or otherwise improper. Herrera relies heavily on the fact that he attended only three years of schooling and has limited literacy skills. But a translated transcript of the conversation between Herrera and Det. Padron shows that, despite some difficulty with pronunciation, the two conversed meaningfully without incident.[12] Furthermore, Herrera responded appropriately to both Det. Padron's questions and the written advisements.[13] Specifically, after reading that he had a right to an appointed attorney

---

[10] *Thompkins*, 130 S. Ct. at 2262.

[11] *United States v. Bustillos-Munoz*, 235 F.3d 505, 516 (10th Cir. 2002).

[12] *See id.* at 517 (stating that *Miranda* warning need only communicate the "substance" or "essence" of the suspect's constitutional rights).

[13] *See United States v. Sanchez-Chaparro*, 392 Fed. App'x 639, 644 (10th Cir. 2010) (stating, in a case in which a native Spanish speaker claimed he did not understand a *Miranda* warning given in English, that the defendant was sufficiently proficient in English to understand the warning in part because the defendant responded appropriately to investigators' questioning).

and being asked whether he understood that right, Herrera responded, "Yes . . . I don't have any . . . I don't have any money to pay a lawyer."[14]

Most importantly, Det. Padron explained to Herrera that he should read and understand each advisement before placing his initials beside the statement. After this explanation, Det. Padron asked no fewer than seven times—once after each advisement—whether Herrera understood the statement he just read aloud. Each time, Herrera responded, "Yes."[15] The Court cannot conceive of further action by Det. Padron to ascertain Herrera's comprehension of the *Miranda* warning.[16] Despite Herrera's limited educational background, his responses to Det. Padron's questions and affirmations that he understood the advisements he read show by a preponderance of the evidence that Herrera received and understood his *Miranda* rights.

Herrera asks the Court to rely on *United States v. Robles-Ramirez*,[17] in which the Western District of Texas suppressed a defendant's statements to investigators because the defendant could not read a written *Miranda* warning. That case is distinguishable on its facts and the legal question presented. The investigator in *Robles-Ramirez* simply handed the defendant the written warning and

---

[14] Gov't Ex. 2, p. 3.

[15] *Id.* at pp. 2–3.

[16] The Tenth Circuit has noted that circumstances exist in which suspects may be unwilling to admit lack of comprehension of the *Miranda* warning. *See, e.g.*, *United States v. Alarcon*, 95 Fed. App'x 954, 956 (10th Cir. 2004) (noting that a defendant testified that he "often pretend[ed] to understand English because he want[ed] to appear cooperative"). Nevertheless, federal law places the onus upon the defendant to make any confusion known to investigators and, correspondingly, to ask for clarification. *See, e.g.*, *Thompkins*, 130 S. Ct. at 226 (holding that a suspect must unambiguously invoke the right to remain silent); *Davis v. United States*, 512 U.S. 452, 458–59 (1994) (holding that a suspect must unequivocally invoke the right to counsel before investigators are obligated to cease questioning). The conduct of the investigators in this case comports with the law's requirements. Further vigilance or safeguarding of suspects' rights is at the discretion of the investigating agency.

[17] 93 F. Supp. 2d 762 (W.D. Tex. 2000).

allowed him time to read the statement without ensuring that the defendant could in fact read.[18] The officer could not remember seeing the defendant scan the document and a defense expert testified that the defendant could not recognize "any number of *simple* Spanish words."[19] The issue before the court, therefore, was not whether the defendant *understood* the warning—the more fundamental issue was whether the defendant even *read* the warning.[20] Here, Det. Padron asked Herrera to read the statements aloud, thereby ensuring that Herrera could read. Although Herrera read the warning haltingly, he stumbled only over pronunciation of large words and the formal abbreviation of the word "usted." Therefore, *Robles-Ramirez* is inapplicable to these facts.

**B.     Herrera impliedly and voluntarily waived his *Miranda* rights.**

Having concluded that Herrera received and understood the *Miranda* warning, the Court must decide whether Herrera voluntarily waived his rights. The Due Process Clause requires courts to ensure that a defendant's will was not "overborne by the circumstances surrounding the giving of a confession."[21] The Tenth Circuit "assesses voluntariness of a suspect's waiver of his *Miranda* rights by examining the totality of the circumstances" and such factors as the length of the detention and interrogation, and the use or threat of physical force.[22]

Herrera contends that he did not waive his *Miranda* rights because he did not read or understand the waiver portion of the form he was given. Assuming Herrera's allegation is true, he

---

[18] *Id.* at 763.

[19] *Id.* at 764.

[20] *Id.* (asking, "[b]ut *did* he read them?" and holding that "the defendant could not and did not read his *Miranda* rights").

[21] *Dickerson*, 530 U.S. at 434 (citation omitted) (internal quotation mark omitted).

[22] *Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004).

nevertheless elected to speak with investigators after reading aloud his *Miranda* rights. As the Supreme Court stated in the recent case of *Berghuis v. Thompkins*, answering an investigator's question is "a course of conduct indicating waiver."[23] Therefore, Herrera implicitly waived his *Miranda* rights by talking to Det. Padron.[24]

Furthermore, the Court concludes that Herrera's implicit waiver was voluntary. In his memorandum, Herrera alleges that his statements were "improperly coerced by Det. Padron's intimidating interrogation tactics in an incommunicado, police-dominated atmosphere."[25] But testimony elicited at oral argument does not support this conclusory assertion. According to Det. Padron's testimony, only two officers—Det. Padron and an ICE agent—were presented during Herrera's questioning and neither was in uniform. Det. Padron testified that he was not armed and he similarly did not see any weapons in the ICE agent's possession. Neither agent made promises or threats to Herrera and Det. Padron testified that he used a conversational tone when speaking. Given the complete lack of evidence of any coercive or intimidating circumstances, the Court finds that Herrera voluntarily waived his *Miranda* rights.

In conclusion, Herrera received and understood the written *Miranda* warning provided to him. By answering Det. Padron's questions after reading the warning, Herrera implicitly waived his *Miranda* rights. The evidence presented fails to show coercive conduct on the part of the

---

[23] 130 S. Ct. at 2263 (citation omitted) (quotation marks omitted).

[24] At oral argument, the government asked the Court to assume a line in the transcript in which Det. Padron asked Herrera, "Knowing your rights, did I ask you some questions?" was a typographical error that should in fact read, "Knowing your rights, *can* I ask you some questions?" *See* Gov't Ex. 2, p. 3. But Det. Padron testified that he reviewed his handwritten translation of the conversation as well as the typewritten copy. Absent testimony from Det. Padron that he did in fact say "can" rather than "did," the Court will not assume error. Consequently, the Court cannot assume Herrera's affirmative response to this question constituted an explicit waiver of his *Miranda* rights.

[25] Doc. 60, p. 3.

government. Therefore, the Court holds that Herrera voluntarily, knowingly, and intelligently waived his *Miranda* rights.

**IT IS ACCORDINGLY ORDERED** this 2nd day of December, 2011 that Defendant's Motion to Suppress (Doc. 59) is hereby **DENIED**.

**IT IS SO ORDERED**.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE