# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 11-10074-01,03-EFM

SERGIO ALVAREZ, and
MARIANO HERRERA,

    *Defendants.*

## MEMORANDUM AND ORDER

After conviction by a jury for violating federal drug laws, Defendants Sergio Alvarez and Mariano Herrera each renewed their previous Motions for Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure (Docs. 139, 140). Defendants allege that the evidence presented at trial is insufficient to support the jury's guilty verdicts. A court may set aside a guilty verdict if no reasonable jury could have found that the evidence, when viewed in a light most favorable to the prosecution, proved the essential elements of the crime beyond a reasonable doubt. Here, the prosecution presented sufficient circumstantial evidence that a reasonable jury could conclude that Defendants aided and abetted or constructively possessed with the intent to distribute at least 400 grams of methamphetamine and engaged in a conspiracy to do the same. Consequently, the Court denies Defendants' motions.

## I. Factual and Procedural History

The Government elicited the following evidence and testimony at trial. In the course of a police investigation, a confidential informant introduced Defendant Sergio Alvarez and an undercover Wichita police officer, Detective Padron. On or about May 11, 2011, Alvarez and Det. Padron negotiated an agreement for the purchase of one pound of methamphetamine. During that meeting, Alvarez offered to give Det. Padron a sample of the methamphetamine. Alvarez made a phone call, and Defendant Mariano Herrera subsequently arrived at the meeting with a small amount of methamphetamine. At that time, Herrera was driving a red Saturn with a Kansas license plate. The following day, Det. Padron met Alvarez at a car wash to make the purchase. Herrera again met Det. Padron and Alvarez in the red Saturn, but the car now bore Georgia plates and Herrera was accompanied by Alvarez's brother, Mario Alvarez. Mario approached Det. Padron and retrieved from his pocket a large bag of what was later found to be 436.5 grams of 95% pure methamphetamine. Herrera, Alvarez, and Mario were all arrested at the scene.

Defendants were indicted on two counts of violating federal drug laws. Count 1 charged Defendants with possession with intent to distribute in excess 400 grams of methamphetamine.[1] Count 2 charged Defendants of conspiring, with each other and Mario Alvarez,[2] to distribute in excess of 400 grams of methamphetamine.[3] In both counts, the Government also charged Defendants under a theory of aiding and abetting.[4] After the close of the Government's case,

---

[1] *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

[2] Mario Alvarez was indicted as a co-defendant in this case, but pleaded guilty to the three charges against him after voir dire and prior to opening arguments. The impaneled jury was simply informed that Mario Alvarez was no longer a defendant in the case. The charges against Herrera and Alvarez remained unaltered.

[3] *See* 21 U.S.C. §§ 846, 841(a)(1).

[4] *See* 18 U.S.C. § 2.

Defendants moved for acquittal under Fed. R. Crim. P. 29(a). The Court denied Defendants' motion and the jury convicted Defendants on all counts. Defendants now renew their motion for judgment of acquittal under Rule 29(c).

**II. Analysis**

Defendants both argue that the evidence presented at trial was insufficient to support their convictions. When reviewing the sufficiency of evidence to sustain a guilty verdict, the Court "asks whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[5] The Court may consider all direct and circumstantial evidence admitted at trial[6] as well as "all reasonable inferences to be drawn therefrom."[7] Substantial evidence must support the conviction, but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt."[8] Furthermore, the Court cannot cast aspersions on the credibility of witnesses or weigh conflicting evidence, because "these matters are within the exclusive providence of the jury."[9]

Defendants raise several arguments to support their motions for judgments of acquittal. Both Defendants argue that the Government did not prove beyond a reasonable doubt that Defendants conspired to violate federal drug laws because the Government did not prove that there was any

---

[5] *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[6] *See United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006).

[7] *United States v. Wacker*, 72 F.2d 1453, 1462 (10th Cir. 1995) (citations omitted).

[8] *United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005).

[9] *Magallenez*, 408 F.3d at 682 ("The jury apparently believed the witnesses, and that is the end of the matter.").

agreement between the three charged defendants. Herrera also argues that (1) he cannot be convicted of aiding and abetting possession of methamphetamine because the Government did not prove Alvarez was the principal offender, (2) the Government did not prove beyond a reasonable doubt that he aided and abetted possession with intent to distribute methamphetamine, and (3) the Government did not prove that he knew the essential objective of the conspiracy. For the following reasons, the Court finds that each of these arguments lacks merit.

**A.     Sufficient evidence supports Herrera's conviction of possession with intent to distribute methamphetamine.**

To convict a defendant of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), the evidence must prove beyond a reasonable doubt that "(1) the defendant knowingly possessed the illegal drug[,] and (2) the defendant possessed the drug with the specific intent to distribute it."[10] The Government conceded at trial that Herrera did not possess the bag of methamphetamine, and instead argued that he aided and abetted Alvarez's possession with intent to distribute. The Government was thus required to prove that Herrera (1) willfully associated with the criminal venture, and (2) aided such venture through affirmative action.[11]

*1.     The Government presented sufficient evidence to prove beyond a reasonable doubt that the crime of possession with intent to distribute was committed.*

Herrera first argues that the Government failed to establish beyond a reasonable doubt that Alvarez, the alleged principal, possessed with intent to distribute methamphetamine, and therefore, Herrera cannot be convicted as an accomplice. In so arguing, Herrera misstates the law on accomplice liability. Conviction of a principal is not a prerequisite to the conviction of an aider and

---

[10] *United States v. Gonzalez*, 65 F.3d 814, 818 (10th Cir. 1995).

[11] *See United States v. Isaac-Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006).

abettor.[12] In fact, the principal need not even be identified, so long as the prosecution can prove beyond a reasonable doubt that the offense was committed.[13] Therefore, it was not necessary for the Government to prove that Alvarez was the principal who actually or constructively possessed the methamphetamine—the principal could have been Alvarez, his brother Mario, an unidentified person, or all of the above-mentioned inidividuals.[14]

Furthermore, the evidence supports the conclusion that Alvarez was in constructive possession of the methamphetamine because he "knowingly [held] the power and ability to exercise dominion and control over the property."[15] Specifically, the jury heard testimony that a confidential informant told Det. Padron to contact Alvarez to purchase narcotics, and Alvarez remained Det. Padron's point of contact throughout the exchange. Second, Alvarez negotiated the price of the methamphetamine with Det. Padron, suggesting Alvarez had possession of the drugs. Third, Alvarez demonstrated that he could obtain methamphetamine when he called Herrera to bring Det. Padron a sample. Fourth, Alvarez moved the place of the exchange at the last minute and the methamphetamine arrived at the new location, suggesting that Alvarez controlled the drugs' movement. Finally, Alvarez asked Det. Padron how quickly he could sell the pound of methamphetamine, indicated he could get Det. Padron more drugs, and told Det. Padron that the methamphetamine was pure enough to cut for further distributions. A rational trier-of-fact viewing this evidence and its reasonable inferences in the light most favorable to the prosecution could

---

[12] *Colosacco v. United States*, 196 F.2d 165, 167 (10th Cir. 1952).

[13] *United States v. Mullins*, 613 F.3d 1273, 1290 (10th Cir. 2010) (noting that because the government need not prove whom the defendant aided and abetted, the jury is not required to agree unanimously on that person's identity).

[14] *United States v. Carter*, 130 F.3d 1432, 1441 (10th Cir. 1997) (noting that constructive possession may be held jointly among several individuals).

[15] *Id.* at 1441.

conclude that Alvarez knowingly possessed the methamphetamine with the specific intent to distribute it. Therefore, the Government presented sufficient evidence for the jury to find beyond a reasonable doubt that the offense of possession of methamphetamine with intent to distribute was committed.

### 2. *Sufficient evidence supports Herrera's conviction as an aider and abettor.*

The Court now turns to Herrera's conviction of aiding and abetting possession with intent to distribute. Herrera alleges that the Government presented insufficient evidence to prove beyond a reasonable doubt that Herrera intentionally participated in and aided the crime of possession with intent to distribute narcotics. Herrera argues that he was simply driving the Alvarezes on the day of the exchange and his mere presence is insufficient to support his conviction, even if the jury could infer that Herrera had knowledge of the crime.

According to federal appellate courts, "determining whether [] evidence is sufficient to support a conviction for aiding and abetting in a drug distribution case is difficult if not impossible."[16] Aiding and abetting criminal conduct "may be established by circumstantial evidence and the level of participation may be of 'relatively slight moment.' "[17] But Herrera is correct that his mere presence at the scene of the exchange, even imputing knowledge that criminal activity was afoot, is insufficient to support an aiding and abetting conviction.[18] Instead, the evidence must show

---

[16] *United States v. Anderson*, 189 F.3d 1201, 1207 (10th Cir. 1999) (citations omitted) (internal quotation marks omitted).

[17] *United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997) (citations omitted).

[18] *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004).

an intent to further the criminal venture.[19] In this case, the Government presented the following evidence that Herrera participated in and furthered the criminal venture: (1) Herrera brought Det. Padron a sample of methamphetamine; (2) the license plates on Herrera's car changed sometime between the meeting with Det. Padron on May 11, 2011, and the exchange on May 12, 2011; and (3) Herrera drove Mario Alvarez, who had a large bag of methamphetamine stuffed in his pocket, to the location of the exchange. A reasonable jury could logically infer from these activities that Herrera participated in and intended to further the criminal venture to possess and distribute methamphetamine. Therefore, sufficient evidence supports Herrera's conviction for possession with intent to distribute in excess of 400 grams of methamphetamine.

**B.     Sufficient evidence supports Defendants' convictions for conspiracy to distribute in excess of 400 grams of methamphetamine.**

Defendants challenge the sufficiency of the evidence supporting their convictions for conspiracy to distribute in excess of 400 grams of methamphetamine. To find a defendant guilty of conspiracy to violate federal drug laws, the Government must prove the following elements beyond a reasonable doubt: (1) an agreement with a co-conspirator to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators.[20] A jury may "infer an agreement constituting a conspiracy 'from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose.' "[21] The fact-finder may also consider the

---

[19] *See id.* (affirming the defendant's conviction for aiding and abetting possession with intent to distribute marijuana when the defendant drove the van containing the drugs, paid for gas, sprayed air freshener to mask the smell of the marijuana, and lied to law enforcement).

[20] *See Carter*, 130 F.3d at 1439.

[21] *Id.* (quoting *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994)).

following factors when drawing an inference of conspiracy from circumstantial evidence: "(1) a defendant's presence at the crime scene; (2) a defendant's association with co-conspirators; (3) evidence of conflicting stories; (4) active attempts to divert officers' attention from a stopped vehicle; (5) participation in drug transactions; or (6) knowledge of and control over drugs."[22]

Alvarez and Herrera both argue that the evidence does not support a conclusion that they had an agreement between themselves and/or Mario Alvarez to violate federal drug laws. Defendants argue that there was an agreement between Alvarez and an unidentified man to distribute the methamphetamine and an agreement between Alvarez and Det. Padron to purchase the methamphetamine, but no agreement between the defendants. Herrera also argues that the Government presented no evidence that he knew the essential elements of the conspiracy.

The evidence presented in this case would permit a jury to infer that Defendants had an agreement to distribute methamphetamine and that Herrera knew that the objective of the parties' agreement was to distribute methamphetamine. First, the discussions between and actions of the co-conspirators are consistent with those engaged in drug trafficking. Alvarez told Det. Padron that he had more methamphetamine if Det. Padron sold the initial pound, and that the drugs were pure enough to be cut before resale.[23] When the police arrested Defendants, Mario threw away a digital scale that was disguised as a smartphone. The fact that Mario was carrying both a pound of methamphetamine and a digital scale indicates that he intended to sell the drugs. Because Herrera drove Mario to a location specified by Alvarez, a reasonable juror could infer that all three men participated in the sale. Indeed, the Government's description of the events cast them in the roles

---

[22] *Delgado-Uribe*, 363 F.3d at 1083.

[23] *See, e.g.*, *Carter*, 130 F.3d at 1440 (finding a conspiracy in part due to the high purity level of the drugs compared to the purity of "street level" cocaine).

of wheelman, bagman, and lipman in the operation. Det. Padron testified that Herrera acted at the direction of Alvarez, indicating that some business agreement existed between them. Herrera brought the sample of methamphetamine when Alvarez called; and, despite a last-minute change in venue, Herrera drove Mario and the pound of methamphetamine to the car wash for the exchange. And before driving to the exchange, the license plates on Herrera's car were changed, presumably in an attempt to deceive law enforcement.[24]

Reviewing the aforementioned evidence and its logical inferences as a whole, a reasonable jury could find that the Government proved, beyond a reasonable doubt, that Alvarez and Herrera knowingly conspired with each other and/or Mario Alvarez to distribute in excess of 400 grams of methamphetamine. For that reason, sufficient evidence supports Defendants' convictions on that charge. Because sufficient evidence supports each of Defendants' convictions, the Court declines to set aside the jury's guilty verdicts under Fed. R. Crim. P. 29(c).

**IT IS ACCORDINGLY ORDERED** this 16th day of May, 2012, that Defendants' Motions for Judgments of Acquittal (Docs. 139, 140) are hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] *See Delgado-Uribe*, 363 F.3d at 1084 (noting that a can of air freshener in the defendant's car supported an inference of a conspiracy because the defendant was attempting to deceive police by masking the smell of marijuana).