IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 11-10074-03-EFM |
| | ) | |
| MARIANO A. HERRERA, | ) | |
| | ) | |
| *Defendant*. | ) | |

MEMORANDUM AND ORDER

Defendants charged in federal court with a felony who cannot afford to obtain adequate legal representation on their own are entitled to have such representation furnished to them. Often, this is achieved through the services of the Federal Public Defender's Office, but frequently (generally due to conflicts in multi-defendant cases) attorneys are chosen from a panel of attorneys approved for furnishing such representation. Such appointments are essentially public service appointments, but appointed counsel are nonetheless entitled to be compensated for time "reasonably expended" in such representation.[1] Just what constitutes "reasonably expended" time is a matter the Court now considers in reviewing the CJA payment voucher presented by appointed counsel in this case.

Defendant Mariano A. Herrera and two other defendants were indicted by the Grand Jury on May 18, 2011, in a two count indictment charging possession with intent to distribute methamphetamine, and conspiracy to distribute methamphetamine. Two days later, on May 20, the defendant was arrested and Holly Dyer was appointed by the Court to represent him. At his

---
[1] 18 U.S.C. § 3006A(d)(1).

initial appearance and arraignment, he waived a detention hearing. A superseding indictment was returned on September 14, 2011, although this only added a third count solely as to another defendant, and added a forfeiture count regarding the third count against that other defendant. A second superseding indictment was returned on October 13, 2011, which adjusted the description of the methamphetamine, but otherwise did not change the counts. Rrachelle Breckenridge, an associate with Ms. Dyer's firm, entered her appearance in this case on April 16, 2012 (though she was not separately appointed) and participated in all matters thereafter.

The Court issued its standard General Order of Discovery & Scheduling on May 24, 2011. On July 5, 2011, Herrera and another defendant joined in a motion to continue the motion deadline and trial schedule, noting that the government had produced a number of documents and recordings, but that Herrera was seeking more documentation (the other defendant did not indicate that he was). A 30 day continuance was granted, and on August 4, 2011, Herrera (this time alone) sought a further continuance "because discovery is not yet complete." Specifically, the motion for a continuance complained that the government had not produced laboratory tests, English translations of recordings of interviews, and other recordings/transcripts in this case. It was noted that the government had indicated these items would be produced, but the timing of production was unclear. The additional continuance was granted. One week later, on August 11, 2011, Herrera filed a motion to compel discovery regarding confidential informants. Herrera's motion was only one page, however, and adopted the filing of another defendant. A third motion to continue was filed by Herrera on September 6, 2011, which was granted. The motion to compel was denied by the Court on September 20, 2011.

On October 24, 2011, Herrera filed a Motion to suppress statements or admissions, supported by a short memorandum. After the matter was fully briefed, the Court held a hearing

on the motion on November 28, 2011, and denied the motion. On February 9, 2012, Herrera filed a motion to Compel, itemizing twelve items that the government should be required to produce, supported by an eight-page memorandum. The government responded, asserting that defense counsel misunderstood the rules relating to criminal discovery that the government was obligated to produce, and assuring defendant and the Court that the United States understood its constitutional obligations. The Court held a hearing on this motion on February 28, 2012, and denied the motion in open court without further written order and memorandum.

Following a status conference on the case on April 13, 2012, Herrera filed five motions in limine. The Court denied three of them as moot and denied the other two as well on April 19, 2012. On April 22, 2012, Herrera filed another motion in limine, which the Court denied as moot by text entry the following day.

Trial in the matter was scheduled to begin on April 23, 2012. That day, Herrera presented for a change of plea, but he was unable to enter a plea (although one of his co-defendants did enter a plea of guilty that day). Trial in the matter was held that day and the next two, and on April 25, 2012, the jury returned guilty verdicts against Herrera on both counts. A motion for judgment of acquittal was filed by Herrera on May 9, 2012, and denied by the Court on May 16, 2012. Following two motions for continuance, sentencing was scheduled for August 20, 2012. Defendant faced a guideline sentence of 151 to 188 months (for an offense with a minimum term of 120 months). Herrera filed a motion for downward departure seeking application of 18 U.S.C. 3553(f) (the safety valve). The government moved to strike that filing, but the Court denied that motion and granted the safety valve, and sentenced defendant to 120 months. Defendant is likely to be deported following his term of incarceration.

Herrera's counsel filed an appeal on August 30, 2012, and designated the record for that appeal, but was thereafter allowed to withdraw from the case by the Circuit Court on September 14, 2012. New counsel was appointed for the appeal, and from that date on, Ms. Dyer was no longer involved in the case (nor was her associate, Ms. Breckenridge).

Given that over 95% of criminal cases end in a guilty plea, it cannot be said that a case that went to trial was completely ordinary. But, other than the fact that this case was tried to a jury and did not end in a plea, it was procedurally a quite unremarkable drug case, and largely indistinguishable from any other trial with similar charges, save only for the differing factual particulars. What is most unusual, and prompted this Order, came shortly after counsels' withdrawal. They submitted vouchers reflecting that they had together billed 422.9 hours (31.7 hours for in-court time and 391.2 hours for out of court time) on this matter, for a combined request for payment of attorneys' fees in an amount of $52,862.50. Additionally, the vouchers requested reimbursement of $847.75 in travel expenses and $348.88 in other expenses.[2] A separate voucher seeking reimbursement of "other services" for 15.8 hours of paralegal time in the amount of $869.00 was submitted for the paralegal services of four separately identified paralegals who were employed by the same firm with which Ms. Dyer and Ms. Breckenridge are associated. Finally, in a related application, Ms. Dyer submitted an application for approval of expert services rendered by InterLingual Services for Spanish interpretation in the amount of $10,804.65 for professional services and $908.25 for travel expenses, for a total voucher amount of $11,712.90. Therefore, the Court is asked to approve in total fees and expenses of $66,641.03 associated with the defense of defendant Herrera.

---

[2] The Court's administrative staff adjusted the other expenses to $264.88 by disallowing $120.00 charged for the services of a process server to "locate and confirm address of witness." These types of charges are not reimbursable under the CJA.

4

Although each case is different, and comparisons between cases difficult, it is worth noting that the current maximum amount of attorney's compensation authorized is $9,700 per non-capital felony case.[3] Requests in excess of that amount require certification by the presiding judicial officer that the case involved extended or complex representation for which additional fees were necessary to provide fair compensation, and approval of the same by the chief judge of the relevant circuit court of appeals.[4] A case is "extended" if more time is reasonably required for total processing than the average case.[5] A case is "complex" if the legal or factual issues are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case.[6] After determining that a case is extended or complex, the approving judicial officer must then determine whether excess payment is necessary to provide fair compensation by considering, among others, the following criteria: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.[7]

The Court finds worth judicial note data that all federal courts have received from the Judicial Conference of the United States, Committee on Defender Services, setting forth CJA payments by major offense code nationally and for each judicial circuit. The data reports the Mean, Minimum, and Maximum amount of such fees. For 2011 (the latest year for which such information is available), the highest reported "maximum" fee paid throughout the eight Districts

---

[3] CJA Guidelines § 230.23.20
[4] CJA Guidelines § 230.23.10(c)
[5] CJA Guidelines § 230.23.40(b)
[6] *Id.*
[7] CJA Guidelines § 230.23.40(c)

within the Tenth Circuit, from among a dozen Drug Offense codes was $56,663. This information is noted solely for purposes of perspective.

The Court also finds worth judicial note matters relating to the co-defendant. Herrera actually had two co-defendants, but one of them was represented by the federal public defender, and thus no CJA vouchers for attorney's fees were submitted for that defendant. However, co-defendant Mario Alvarez was also represented by appointed counsel, and his experience should have been comparable. Indeed, Mario Alvarez[8] was the sole defendant whom the superseding indictments ultimately added a third count against, and so he faced three counts instead of the two faced by Herrera. Mario Alvarez entered a plea of guilty, but he did so only after trial had commenced and a jury had been selected. Therefore, although his in-court time would have been different from that of Herrera's counsel (as he did not stay for the remainder of the trial), it is reasonable to assume that his out of court time might have been comparable.[9] However, the Out of court time billed by Mario Alvarez's attorneys[10] was a total of 87.4 hours; roughly 22% of the out of court time billed by counsel for Herrera. Again, this information is noted solely for purposes of perspective.

As noted, Herrera's counsel also submitted an application for approval of expert services rendered for Spanish interpretation in the amount of $10,804.65 for professional services and $908.25 for travel expenses, for a total voucher amount of $11,712.90. Appointed counsel are authorized to obtain expert service (including interpreters) necessary for adequate representation

---

[8] Because the first defendant was Sergio Alvarez, Mario Alvaraez's brother, the Court will continue to refer to this defendant by his full name to avoid any possibility of confusion.

[9] This should also be largely true for post-trial matters, as both Herrera and Mario Alvarez had Presentence Investigation Reports prepared regarding them, and both appeared for sentencing. However, it should be noted that Herrera filed a motion for judgment of acquittal following the jury verdict, and designated a record for appeal, neither of which Mario Alvarez (who pleaded guilty and waived appeal) did.

[10] Counsel initially appointed for Mario Alvarez ultimately withdrew, and new counsel was appointed. Both counsel submitted vouchers for payment of attorneys' fees, and the Court's reference to the time billed with respect to Mario Alvarez (both here and elsewhere in this opinion) reflects the total of both vouchers.

without prior authorization of the Court, provided the total costs of the expert services do not exceed $800.[11] The total costs of services obtained without prior approval *may not* exceed $800; however, in the interests of justice the Court may approve payment for such services in excess of $800 even after they have been obtained, if the Court finds that timely procurement of the necessary services could not await prior authorization.[12] In any event, even with prior authorization, payments for services shall not exceed $2,400 unless such payments are certified by the Court as necessary to provide fair compensation for services of an unusual character or duration; and even then only upon further approval of the excess payment by the chief judge of the circuit court of appeals.[13] Our Local Rules are in conformity procedurally, although they reflect now outdated, lower amounts than those referenced above.[14] Counsel in this case did not seek prior authorization for the payment of interpreter fees in excess of $800, and did not make a showing that procurement of the services represented by such excess fees could not have awaited prior authorization. Further, her submission of the Request and Authorization for Payment of Expert Services did not include any showing of why payments of amounts in excess of the authorized maximums were "necessary to provide fair compensation for services of an unusual character or duration" other than as they might be inferred in her showing regarding her own fees (discussed below).

The amount of maximum allowable compensation (absent approval of excess) applies to both cases that go to trial, and to those that do not. While it is not extraordinary to request such approval for excess fees, in this Court's experience, it is by no means ordinary or typical, and

---

[11] 18 U.S.C. § 3006A(e)(2)(A); CJA Guidelines § 310.20.30

[12] 18 U.S.C. § 3006A(e)(2)(B) (emphasis added).
[13] 18 U.S.C. § 3006A(e)(3); CJA Guidelines § 310.20.10; 310.20.20.
[14] D. Kan. Rule CR44.1(g).

usually arises in connection with a case that went to trial, or had extensive contested pretrial hearings, or that was designated a complex case (this case was not designated as complex).

Several years ago, facing growing demand on the CJA panel that was created principally by the growth in multi-defendant criminal cases, the Court approached many of the prominent civil law firms in Wichita and requested their participation in the CJA panel. The Court was, and is, grateful for the response received from many firms, such as Ms. Dyer's, and the willingness of attorneys in those firms (who would not have otherwise considered themselves engaged in criminal practice) to serve the public interest and the Court by volunteering to participate in the CJA panel. However, it is the Court's duty and obligation to fix the compensation to be paid to the appointed attorney.[15] That duty includes determining what amount of time was reasonably expended.[16]

Appointed counsel are required, when claimed compensation exceeds the maximum amount allowed, to submit a detailed memorandum which supports and justifies that the additional time was made for extended or complex representation.[17] Counsel here submitted the required form. In describing discovery materials or practices which were a noteworthy factor in the number of hours claimed, counsel reported:

> (1) All defendants spoke Spanish and recordings of post-arrest interrogations required translation into English. (2) Despite requests for discovery being made a month after appointment, repeated follow ups with the assistant U.S. Attorney, and a motion seeking discovery, the government failed to produce multiple contemporaneous recordings made by law enforcement until three business days before trial. The conversations captured on these "wire" recordings were all in Spanish and required translation. This required counsel to employ a staff person to conduct translations to attempt to alleviate the prejudice caused by this late

---

[15] 18 U.S.C. § 3006A(d)(5).
[16] *United States v. Hagan*, 2010 WL 1816338 (D. Kan. 2010).
[17] 18 U.S.C. 3006A(d)(3); CJA Guidelines § 230.30. CJA regulations provide that the requesting attorney certify the same to the district judge, on a form provided, in accordance with paragraph 2.22B(3) of the *Guidelines For the Administration of the Criminal Justice Act*, Vol. VII, *Guide to Judiciary Policies and Procedures*.

production. (Submitted on CJA 21.) It further added to the burden of preparing for trial and required additional motions and a hearing.

In describing legal memorandum or research which were a noteworthy factor in the number of hours claimed, counsel reported:

(1) Mr. Herrera is at least functionally illiterate in his native language of Spanish. Because of this and because he was forced by the interrogating officer to read his own Miranda warning rather than having it explained to him, Counsel pursued a Motion to Suppress based on his illiteracy and lack of education. Before the Motion was filed, counsel employed a consultant to assist with an evaluation of Mr. Herrera in this regard. Extended time was necessary to find and employ such a consultant because of the unique literacy issues present in this case (for example, if testing was to be done, it would have to be done in Spanish and assessed in the context of the Spanish language).

In summarizing investigation and case preparation, including record collection and document organization, which were a noteworthy factor in the number of hours claimed, counsel reported:

(1) Defendant's native language is Spanish, and he required an interpreter. Mr. Herrera is at least functionally illiterate in his native language. This required counsel to take steps to ensure that he understood the contents of pleadings, discovery, and letters from counsel. Correspondence and pleadings were translated into Spanish and read orally to Mr. Herrera by the interpreter and with counsel present. This required more face-to-face meetings with Mr. Herrera than in a typical case. (2) It appeared that Mr. Herrera might be the only defendant to go to trial should any of the other two defendants enter a plea agreement (and one did after jury selection). Under these circumstances, counsel needed assistance of an associate (who in this case had prior experience as a federal prosecutor). Per the instructions of Court staff, her time is included in the CJA20 and is identified in the worksheets with her initials "RRB."

In asked to explain any noteworthy impact on the number of hours claimed of investigative, expert or other services, counsel reported:

See # 3 & 4 above. In addition to the use of staff to translate late-produced wire recordings, counsel also required the use of paralegals to assist with investigation and trial preparation.

On the form, counsel also indicated that "Communication with Client/Family," "Accessibility of Client," and "Language Difference" were all noteworthy factors in the number of hours claimed, explaining:

> As noted above, Mr. Herrera's native language was Spanish, and he was at least functionally illiterate in his native language. Because counsel could not be sure that communication in writing would be sufficient, additional face-to-face time with Mr. Herrera was necessary. Mr. Herrera was housed at the detention facility in Butler County which required counsel to travel 27 miles each way for these visits.

Finally, when asked to explain any other noteworthy circumstances regarding the case and the representation provided to support the compensation request, counsel reported:

> See the explanations previously provided herein. In addition, trial was extended due to last-minute plea negotiations and two failed plea hearings. Counsel is still relatively new to the CJA panel, and this was her first appointment to proceed past the motion to suppress stage. This impacted the time and research devoted to the case. This also was a factor in having an associate assist with trial preparation and attendance.

Counsel accordingly submitted bills for 40.0 hours for interviews and conferences, 33.8 hours for obtaining and reviewing records, 157.6 hours for research and writing, 34.6 hours for travel time, and 125.2 hours for investigation, plus a total of 31.7 hours in court. The paralegals jointly submitted bills for 0.3 hours for interviews, 1.5 hours for records, 3.1 hours for research and writing, and 10.9 hours for investigation.

The Court has thoroughly reviewed counsels' submission, these governing authorities, and the proceedings in the case. Counsels' submission mentions numerous times that her client spoke only Spanish, was functionally illiterate in his native language, and required the services of an interpreter -- sometimes even requiring documents to be read to him in Spanish. While the Court recognizes that this may be a complicating factor in representation of the client, it is by no means an unusual one. Perhaps close to half of the defendants for whom attorneys must be

appointed are Spanish speakers, and many of them are functionally illiterate in their own language.  Counsel at one point in her justification memorandum refers to "unique literacy issues;" but these issues were far from unique.  Many attorneys, whose CJA fee requests are within the authorized guidelines, face the same issues.  This is by no means an unusual factor justifying excess fees.  Nor is counsel's report that her client was housed at a detention center in Butler County, 27 miles distant.  A significant number of criminal defendants in this Court are housed there, possibly more there than any other location.  This, again, is not a distinguishing factor.

Counsel noted that she was still relatively new to the CJA panel, and that this was her first CJA appointment to proceed past the motion stage to trial.  As noted, the Court deeply appreciates the involvement of the bar in rendering public service to the interests of justice by accepting appointments in these cases, but the compensation guidelines do not allow payment for time spent in learning the field.  Indeed, the Court cautioned counsel during the case that her motion practice here was more appropriate to a complex civil case (where Ms. Dyer has distinguished herself as an outstanding lawyer), and that her confusion of civil rules of discovery with the requirements of the criminal rules' obligations on the United States were causing her to take many unnecessary and unwarranted positions.  The Court accepted her plea of newness to the criminal practice, but it did so on the assumption that she would not be submitting payment requests for her time spent learning (and for her time misspent, which is a part of the learning process).

The Court cannot approve the total number of hours billed by counsel in this case.  While the case did go to trial rather than (as to this defendant) be resolved in a plea, it was neither legally complex nor did it involve much extended representation (although the Court will address

that later), as that phrase has been defined above. The Court is sensitive to ensuring that criminal defendants receive a fully adequate representation, but it is not obligated to pay counsel for excessive time (whether incurred due to counsel's inexperience in this area of the law, or for other reasons). Indeed, the Court is obligated to *not* pay for excessive time. Counsel complained of the distance to travel to see her client, but her fee submission demonstrates that she made 23[18] trips to visit her client in jail, 6 of them after the trial. That is more than adequate representation requires. Counsel filed motions to compel against the government, and complained in her Statement for Compensation in Excess of Statutory Maximum that the government failed to make timely productions, to her client's prejudice. But as the Court explained to counsel, the government was at no point out of compliance with its constitutional and statutory obligations to produce matters to defendant. The Court understands that the radically different rules of production in a criminal case from those which exist in a civil case can be frustrating for an attorney more used to the civil arena, but such frustration is not a basis to compensate the attorney for unnecessary motions and hearings. Ms. Dyer is an outstanding attorney with whom the Court is personally familiar, and we are fortunate to have the services of such counsel on the CJA panel. But the Court has an obligation to only compensate appointed counsel for services which are necessary to provide fair compensation under the standards established by the CJA Guidelines, as set forth above. The compensation claimed by counsel here far exceeds that.

Although the Court has reviewed the full billing statement submitted by counsel, in this case it is more efficient to indicate what amounts will be allowed rather than what amounts will not be allowed. Even though the filing of unnecessary motions may have created unnecessary Court hearing time, it was not material, and so the Court will allow the 31.7 hours of In Court

---

[18] Actually, 23 is the number of trips for which counsel sought mileage reimbursement. A review of the detailed billing records suggests that at least another 8 jail visits with the client occurred, many of them in the local jail.

time claimed. Counsel claimed 40.0 hours for Interviews and Conferences but the Court can allow no more than 25.0 hours[19] – which should have been more than sufficient. Counsel claimed 33.8 hours for obtaining and reviewing records,[20] but the Court will only allow 10 hours.[21] Counsel claimed 157.6 hours for Legal Research and Writing; this for a case that the Court finds presented no significant or unusual legal issues. Much of that may have been time counsel spent learning the field, which as noted previously is not compensable. Quite a bit of it no doubt was spent in what the Court told counsel at the time was unnecessary motions to compel the government to do things either that it was doing, or that the law did not require it to do (at least not on the timetable counsel requested). Even considering defendant's post-trial motions, the Court finds that 20 hours was all that was reasonably necessary to provide fair compensation.[22] Counsel claimed 34.6 hours for Travel Time. As already noted, counsel's 23 plus trips to visit her client in an adjacent county where he was being held pretrial was excessive. The Court allows 15 hours, which is still on the high side of reasonably necessary.[23] Finally, counsel claimed 125.2 hours for Investigative and other work. This case was not factually complicated, and a review of counsel's detailed billing memorandum indicates that many unusual and unnecessary avenues were pursued.[24] Because the Court always wants to give appointed counsel broad leeway to pursue what they think may be necessary for their client's

---

[19] Both appointed counsel for co-defendant Mario Alvarez claimed only 17.2 combined.
[20] A review of the billing records suggests that some of that may have related to medical complaints Mr. Herrera may have had against the prison holding him pretrial; but potential civil complaints of that nature are beyond the scope of counsel's appointment.
[21] Appointed counsel for the co-defendant claimed 1.3 hours.
[22] Appointed counsel for the co-defendant claimed 5.0 hours.
[23] Appointed counsel for the co-defendant claimed 10.6 hours.
[24] For instance, the Court was puzzled to see numerous time entries relating to a consultant that counsel hired, or contemplated hiring for some "testing" issue. No authorization to hire a consultant was sought, and no consultant fees (other than the interpreter fees, discussed separately below) were submitted for payment. Yet counsel apparently billed over 10 hours visiting with a consultant.

13

defense, in this case the Court finds that 60 hours should be fully adequate to permit what was reasonably necessary.[25] Therefore, the Court approves a total of 130 hours.[26]

Counsel's also requested reimbursement of $847.75 in travel expenses, for 23 trips to visit her client in an adjacent county where he was being held. The Court has already indicated that this number of trips exceeded what was reasonably necessary to provide fair representation, and so must make a conforming adjustment here. The effect of the Court's earlier reduction is roughly equivalent to a reduction of 10 trips, and so the Court reduces this amount by $277.65 to reflect a removal of 10 trips from the travel reimbursement claim.[27] Therefore, travel expenses in the amount of $570.10 are approved. Reimbursement of $384.88 for other expenses was requested. The Court's administrative staff reduced this by $120.00, disallowing fees for a process server as being non-reimbursable under the CJA. Some of the other items appear of questionable relevance, but the Court allows the administratively adjusted claim of $264.88 for other expenses.

This brings us to the matter of the Interpreter services. Counsel caused to be submitted to the Court a Request and Authorization for Expert fees, which were for interpretation services, in the amount of $10,804.65, with travel expenses of $908.25. The Court is troubled by this one. As noted above, absent prior approval, the Court is not authorized to reimburse more than $800 of these fees. Counsel did not obtain prior approval (nor do they meet the one, limited exception to this requirement, also discussed above). Therefore, the Court can only approve $800 of this

---

[25] Appointed counsel for the co-defendant claimed 53.2 hours.
[26] This amount is in excess of the maximum allowable, and will require certification by this Court and submission for approval by the Chief Judge of the Circuit Court. This Court is prepared to certify that the excess amount is necessary because, due to appropriate pretrial motions, the trial itself, and post trial matters, the case was "extended."
[27] Counsel claimed 52 miles for each trip except a final, post trial trip to Leavenworth. Mileage is reimbursed at $0.51 a mile. This would reduce the mileage claim by $265.20. Additionally, counsel claimed reimbursement for various amounts of tolls (based, no doubt, on her starting from different locations). The 10 lowest toll amounts claimed for these trips are $15.95 (2 at no charge [a third trip for which no tolls were claimed was to Leavenworth, which trip is allowed], 1 at $0.95; 5 at $1.60 and 2 at $1.75).

amount. It would be illogical to approve only $800 in fees, but the full $908 in travel expenses, so the Court is compelled to make a corresponding reduction to the travel expenses, and approve only $67.25. This order, which the Court is legally compelled to make, seems to unjustly punish the interpreter, who is an innocent victim of counsel's actions (or inactions). Accordingly, the Court has researched this matter, and finds that due to counsel's inaction in obtaining legal authorization beyond the $800 amount, only the authorized $867.25 in approved expenses were covered by the CJA. The rest of the expenses that counsel caused the interpreter to incur were done outside authorization of the CJA, and therefore the Court finds that these excess amounts were contractually procured by counsel's firm. The Court accordingly finds and orders counsel to reimburse the interpreter for the remainder of the services obtained from the interpreter, beyond the legally authorized reimbursable amounts.

The Court generally approves of the "other services" voucher submitted for 15.8 hours of paralegal services in the amount of $869.00. However, these services, like those of the interpreter, are limited to $800 absent prior approval. Since no prior approval was obtained, the Court allows only $800 of these services.

When a reviewing judge fixes compensation to an appointed attorney at an amount that would reduce the claim submitted by that attorney, the regulations provide that the appointed attorney shall be provided advance notice of the proposed reduction by the Court with a brief statement of the reasons for the reduction, and shall be provided with an opportunity to address the matter.[28] Accordingly, the Court grants counsel 14 days from the date of this Order to file a written response. Further, if counsel requests an opportunity to be heard orally in addition to the

---

[28] CJA Guidelines § 230.36

written response, counsel should so indicate in the response and the Court will schedule a hearing date promptly.

IT IS SO ORDERED.

Dated this 7th day of February, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE